Good morning. May it please the Court, Lawrence Rolfing on behalf of Ted Wolfram. Ted Wolfram is a claimant for Social Security benefits on the basis of irritable bowel syndrome. We have a number of physicians who have given us opinions about what kinds of environments Mr. Wolfram can and cannot tolerate. Dr. Johansson said that any kind of stress is going to aggravate and preclude that kind of work environment for Mr. Wolfram. Dr. Johansson is a treating examiner who conducted a psychological evaluation. Dr. Johansson said that there are moderate limitations in performing work activity at every level of cognition, whether it be simple one- and two-step instructions to complex instructions and everything in between. She made no differentiation. Dr. Rattigan said that any kind of time pressures would aggravate Mr. Wolfram's irritable bowel syndrome. One doctor, and one doctor only, made the distinction between different levels of cognition and different levels of complexity in different work environments. It's Dr. Smith, the non-examining physician. The non-examining physician under the cases that preceded and that have come after Lester v. Shader have told us is at the bottom rung in the hierarchy of medical obligation to articulate specific and legitimate reasons for rejecting the opinion of Dr. Johansson that's implicitly supported by the findings of Dr. Young, and is clearly supported by the opinions of Dr. Becker, who's the treating psychologist, and Dr. Rattigan. Didn't he practically do that in the questions to the Vochexpert? There comes a point when you're stirring... Did he start with a yes or no? No, he did not. Okay. Explain. When the ALJ directs the vocational expert and makes a specific finding that the claimant is incapable of performing work in a high-stress work environment, and the basis for that conclusion is that Mr. Wolfram was able to perform volunteer work, which the ALJ characterizes as no stress, to make that leap of faith and then say, well, it doesn't matter what low stress is or moderate stress is, it matters that he just had proximity to the restroom, but that isn't what the physicians have said. What the physicians have said is that any kind of workplace stress, the drumbeat of pace and production, the stress of meeting the bona fide expectations of an employer to maintain productivity, because that's what an employee does, is maintain productivity, whatever their occupation is, that kind of activity is going to put Mr. Wolfram in a position where his irritable bowel syndrome is going to flare, and according to all of these physicians, is going to be at least moderately impacted. And moderately, if we look at the form that's completed by Dr. Smith, it's mandated by statute to complete a mental RFC assessment, moderate is significant, and if it is in fact significant, then the ALJ needs to address that evidence and either accept it or reject it, and the ALJ did not do that in this case, not in his decision and not in the questioning of the vocational expert. Were Young and Smith treating physicians? Young is the consultative examiner and Dr. Smith is the state agency physician. Is the answer no? No. Yes. Thank you. I tell people not to elaborate and I always do it myself. I'm my own worst client. I apologize. But Dr. Johansson was a treating physician, wasn't he? Dr. Johansson, yes. And he rendered an opinion that he was disabled. I'm sorry, say that again. He rendered an opinion of disability. Yes, he did. Yes, he did. And did the ALJ specifically say why he did not credit Dr. Johansson? He didn't make any. I reviewed the decision and I did not see any reason that could be read reasonably as a criticism of Dr. Johansson, much less a rejection of Dr. Johansson. This is a simple case and I submit on the, I'll preserve the balance of my time. Okay, you have about five and a half minutes for rebuttal if you need it. Yes. We'll hear from the commissioner at this time. Counsel? Good morning. Shea Bond on behalf of the Commissioner of Social Security. I think what's significant in this case and what counsel did not address during the opening argument is that the ALJ actually credited statements by the claimant and his wife regarding the frequency and duration of the restroom breaks that the claimant required to accommodate his irritable bowel syndrome symptoms. And the, typically I think claimants will contend that the ALJ improperly rejected their credibility in the statements regarding how their symptoms impact them. But in this case, it's the exact opposite. Isn't this somewhat unusual? Because the claim is that it's stress that aggravates the problem, to use a shorthand. And his wife was testifying to what she observed in circumstances when he was not under stress, when he was at home, when he was doing chores. And so he credited her testimony, yes. But don't you have to put it in the context of what the claim of disability is here? I would disagree with the premise that the wife was only describing the claimant's symptoms during, say, asymptomatic periods. When she completed the disability questionnaire, the questionnaire had specifically asked her to describe how the stable illnesses and symptoms limited the activities. And then with that specific question... Did she testify at the hearing or was it relying on...  She did not testify at the hearing. But when a questionnaire is submitted to the agency, you're attesting that the information on it is correct. So in describing, again, the fact that the claimant only required bathroom access every three to four hours, the specific question said, describe any changes in the activities since the illness, injuries or condition began. So she's being specifically asked, please describe how your husband's irritable bowel symptoms that you are alleging are disabling. How do they manifest themselves? And she specifically answered, he needs the bathroom every three to four hours. Well, we know what... I'm not sure whether... Well, it's at least unclear what she's referring to. I mean, it seems to me that to the extent that she has personal knowledge, it's in terms of her observations of him when she's with him. Correct. And the ALJ found that in instances where the claimant is under lower stress situations, this accommodation would suffice to accommodate his bathroom needs and his stress levels. If we accept the fact that her observations are limited to the home setting, that's pretty much a no-stress situation, isn't it? I would disagree, Your Honor. She also described the claimant's abilities to go out and walk five miles with their dogs, to go out and perform volunteer activity at the local... I always find that very relaxing, but go ahead. Well, if the claimant is alleging that his... Essentially, he's alleging that his fear of lack of bathroom access is what's causing the stress and then the urgency to go. So I think... But he testified, though, specifically that that sort of activity, if he soiled himself, that it was a private matter. The high stress comes from when you're in a work environment where you don't have access to the bathroom and you're embarrassed. Didn't he say that specifically in his testimony? He said that specifically, but then the ALJ accommodated that fear by allowing a job that allows unpredictable bathroom access. And we had a vocational expert who has specialized expertise in placing individuals with IBS in the workforce. So that... And the vocational expert said he could be a used car lot attendant? Order at a car lot. Yes. That was one of the... And that position did not provide for bathroom access particularly, did it? The ALJ had identified three jobs total. Yes, well, that was one. The second one was recreational aid. Correct. As I recall, the voc rehab expert's testimony on that said, well, I'm not sure you're talking about adults or children. It could be outside activities or inside. So how does the record support that, that that job would have frequent access to bathrooms? The vocational expert specifically testified that these jobs would have the required bathroom access. For the recreational aid, he said that because the person would not be tied to a desk job, that the freedom to access the bathroom would be much greater than... Right. But on cross-examination, didn't the voc rehab expert say, well, it could be outside and that could be limited? He really didn't know, did he? I would disagree, Your Honor. I'd say he did know. But even assuming that the recreational aid occupation were not permitted the bathroom access he needed, the vocational expert then identified janitor jobs where he said that there were hundreds of thousands of janitor jobs where there would be the almost unfettered access to the bathroom. And there's no challenge to those jobs. Those jobs exist in, I think it was in excess of 300 or 350,000. And under this court's case law, that's well within a significant number of jobs the claimant can do with his irritable bowel symptoms. Do you agree that the ALJ did not specifically discuss the treating physician's findings and say, I don't accept those findings because there was no, I mean, in the district court I've read hundreds of these and it seemed to me that this was lacking any discussion of the treating physician's findings here? Well, I think that the ALJ recognized that the treating doctors had issued opinions of disability. And the ALJ had specifically stated on page 32 of the supplemental excerpts of record and of the transcript that he did not agree that the claimant was unable to perform all activity. And I would put forth that a treating doctor who says that a claimant is just plainly disabled is issuing an opinion, a vocational opinion, which would be outside their area of expertise. That's why the ALJ did the right thing by calling a vocational expert to determine whether specific functional limitations actually precluded work activity. And these treating doctors, when they were issuing the opinion of disability, it was in context with the claimant's private disability insurance claim related to his past relevant work, which we all know was extremely stressful. So when these doctors were rendering an opinion that this claimant was disabled, they're pretty much talking in terms of his past relevant work and other work that could have been made available at that job, which, according to the claimant and some of the treating doctors, there really wasn't any alternative work at his past insurance fraud occupation that prevented the accommodations he needed. The ALJ said that in his findings, his actual findings, he said the claimant is able to perform a wide range of all exertional activities but cannot perform jobs with high stress levels. It seems that he couldn't perform jobs with lower stress levels. The ALJ explained why he found that the claimant could not perform high stress but rather low stress by referring to the claimant and his wife's statements that he was able to perform volunteer work for up to five hours a day and was also able to volunteer at a school, presumably his child's school, for a couple of hours a day, a few days a week. To be able to perform volunteer work would be consistent with a reasonable assumption that the claimant could perform some work that's at least low stress. Well, there are various levels of stress. He says in his findings that he's unable to perform jobs with high stress levels including production line work. He doesn't talk about moderate or low or no stress. Your Honor, again, I would say that his disability is only high stress level jobs. Is there some confusion in the record including the discussion with the vocational expert? I would say that there's no confusion. The evidence had showed that the claimant had worked at an extremely high stress level job in the past and that he was no longer... And they accommodated him in that position and then, unfortunately, the employer decided they took him out of, I guess, field work, if I recall and made other accommodations for him where he had a long work record and he worked with the accommodations and it's when they withdrew the accommodations that he was no longer able to continue working. From the record, it appeared that the accommodations that they made for him still did not permit him the bathroom access he needed. It required very high production quotas and was requiring him to work on weekends and 10 to 12 hours a day and that's why the ALJ found that the claimant could not perform that type of work but could perform low stress work with the bathroom access that he required. I see that my time is up. If there are no further questions, I would ask you to confirm. Thank you. Very briefly, the issue of accommodation, all of the opinions from the treating physician, the constitutive examiner all evaluated Mr. Wolfram after he had stopped working and they expressed their opinions about the intolerance for stress after he'd stopped working and they don't draw the fine distinction that the ALJ would like to read into this record. It just isn't a permissible inference. And the first question that the Court asked about the statement of Mrs. Wolfram, all of the questions that are on page 117 and the pages before that are all phrased in the present tense and I would expect that a witness offering a statement when a question is asked what does your husband do, what does the claimant do that she's going to answer that question and answer the call of the question which is in the present tense and I think the Court's inference that her answers are in the present tense is the correct and the only permissible inference to draw. Other than that, I think we've covered all of the issues and I would submit on the record. Thank you both for coming in this morning. The case just argued will be submitted for decision.
judges: Korman, Hawkins, Thomas